González Padín Co., Inc., Petitioner, v. Tax Court of Puerto Rico, Respondent; Rafael Buscaglia, Treasurer of Puerto Rico, Intervener.

No. 91. Argued July 1, 1946.—Decided February 26, 1947.

910

*Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for petitioner. *Luis Negrón Fernández, Acting Attorney General (E. Campos del Toro,* former *Altorney General,* on the brief), and *Carlos Santana Becerra, Assistant Attorney General,* for intervener, respondent in the main proceeding.

MR. JUSTICE SNYDER delivered the opinion of the court.

In 1943 the Treasurer notified Padín of income tax deficiencies of 1937 to 1941, inclusive. Padín filed a petition with the Treasurer in which it not only asked for reconsideration of the 1938 deficiency but also made a claim for deduc-

tion of interest it had paid in 1938 but had failed to deduct in its return for that year. In 1944 the Treasurer denied this petition insofar as it asked for reconsideration of the 1938 deficiency but granted the claim for deduction of the interest Padín had paid and failed to deduct in 1938. Since this interest was a larger sum that the improper deductions on which the 1938 deficiency was based, Padín had overpaid its 1938 tax. The order of the Treasurer therefore provided: (1) the 1938 deficiency was satisfied; (2) the overpayment of the 1938 tax, amounting to $2,063.15, instead of being paid to Padín in cash, was credited against the pending 1939 deficiency.

There was no litigation concerning 1938. However, Padín did contest the deficiencies for the other years in the Tax Court, which heard the cases, reduced the 1939 deficiency somewhat, and ordered the Treasurer to file a new computation for 1939 in accordance with its decision. But when the Treasurer filed the new computation in 1946, he refused to include therein the credit for overpayment of the 1938 tax against the 1939 deficiency on the ground that in 1944 his predecessor had erred in granting this credit. According to the Treasurer, this credit was erroneous for the reason that in 1943, when Padín first made its claim for the interest it failed to deduct in 1938, the claim therefor was already barred by the four-year statute of limitations provided in § 64(b) of the Income Tax Act. Padín filed an opposition to the new computation for 1939 insofar as it failed to include the credit for overpayment of the 1938 tax. The Tax Court upheld the action of the Treasurer. We granted the petition of Padín for certiorari to review this decision of the Tax Court.

I

In its first assignment of error Padín concedes *arguendo* that in 1943, when it first claimed it had overpaid its 1938 tax, a claim for refund or credit therefor was barred

under § 64(*b*). But it nevertheless contends that when the Treasurer notified it of a 1938 deficiency, he thereby opened the entire year for investigation, enabling Padín to make the claim for overpayment resulting from its failure to deduct in its 1938 return interest paid in 1938. Padín argues that this result flows from either the doctrine of recoupment or the rule laid down in *Lewis* v. *Reynolds*, 284 U. S. 281.

Although no statutory warrant exists therefor, recoupment has been applied in tax litigation to take the profit out of inconsistency: the courts have refused to permit the government to treat a transaction or taxable event on one theory and thereafter, when the statute of limitations bars a suit for refund as to that theory, to change its theory and collect a tax on an inconsistent theory. *Bull* v. *United States*, 295 U. S. 247; *Stone* v. *White*, 301 U. S. 532; *Rothensies* v. *Electric Storage Battery Co.*, 329 U. S. 296, decided December 16, 1946; 10 Mertens, Law of Federal Income Taxation, § 58.39, pp. 328–31; McConnell, The Doctrine of Recoupment in Federal Taxation, 28 Va.L.Rev. 577, 583 *et seq.;* Zimet, Tax Refund Claims and the Statute of Limitations, 1 Tax Law Rev. 45, 48–50; Maguire and Zimet, Hobson's Choice in Federal Taxation, 48 Harv.L.Rev. 1281, 1321–25.

But if the aim of recoupment in tax cases is to prevent inconsistency in the treatment of one transaction, it follows that under this doctrine a claim which has been barred by the statute of limitations can be used by way of recoupment against an action by the government for taxes only if the recoupment claim "is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." *Bull* v. *United States, supra,* p. 262. "It has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." *Rothensies* v. *Electric Storage Battery Co., supra,* p. 299.

What constitutes the same transaction for purposes of recoupment may be troublesome in other cases. But this case presents no difficulty on that question. The main action of the government involved improper deductions by Padín in 1938 for depreciation, a bad debt, and gifts. These 1938 items were in no way related to the item on which the recoupment claim of Padín is based: its failure to deduct interest paid in 1938.[1] Recoupment will therefore not lie here because the recoupment claim of the taxpayer does not arise out of the same transaction or identical event on which the government's claim is based.[2]

[1] We have examined and found clearly untenable the contention of Padín that this case meets the ''same transaction'' test merely because both the main action and the recoupment claim arose out of the same tax year. In our discussion hereinafter of *Lewis* v. *Reynolds* we assume that once the government notifies the taxpayer of a deficiency, the taxpayer is entitled to offset the deficiency with a credit for overpayment as to any other item in the same year, even though the set off claim is unrelated to the deficiency item, and even though an independent suit for refund by the taxpayer of the setoff item would be otherwise barred by the statute of limitations. This as we shall see is predicated on the theory that when one party takes the initiative and opens a particular year, that year is subject to complete adjustment, enabling his adversary to use claims otherwise barred to offset the principal claim. But although this is a related doctrine, it is different from recoupment, which is founded on the equitable theory that all taxes and credits which arise out of the same transaction—whether the taxes or credits are paid or obtained in the same or in different years—should be adjusted without reference to the statute of limitations to prevent unjust enrichment for one party who is endeavoring to treat the same item inconsistently at different times.

[2] The word ''transaction'' as used in stating the doctrine of recoupment in cases involving private parties, and as used in statutory provisions and rules of procedure dealing with the assertion of counterclaims, has been treated as a term of rather broad and flexible meaning. See *Moore* v. *N. Y. Cotton Exchange*, 270 U. S. 593, 610; *Lesnik* v. *Public Industrial Corporation*, 144 F.(2d) 968, 975 (C.C.A. 2d, 1944); *Utilities Service* v. *Walker*, 78 F.(2d) 18, 23 (C.C.A. 3rd, 1935); 1 Moore's Federal Practice Under the New Federal Rules 682–84. Cf. *Avellanet* v. *Porto Rican Express Co.*, 64 P.R.R. 660. But these cases all dealt with issues and facts far removed from the question presented here; none of them involved the revival of stable claims by means of recoupment or any other procedural device. Recoupment in tax cases, it must be emphasized, presents problems which are not answered by decisions in other fields as to what constitutes the ''same transaction''; and as the *Electric Storage Battery Co.* case makes clear, it has a much more limited scope in tax litigation than in other cases.

Recoupment fails here for an additional reason. We assume that Padín was entitled under *Lewis v. Reynolds,* discussed hereinafter, to offset the overpayment of interest in 1938 against the 1938 deficiency, even though a suit for refund of the former was otherwise barred. But the Treasurer did something more. The 1938 interest claim exceeded the 1938 deficiency. The Treasurer, in addition to considering the 1938 deficiency as satisfied, credited this excess on the 1939 deficiency. But the fact that this was a credit against the pending 1939 deficiency instead of a payment in cash does not convert this case into a dispute concerning the 1939 tax. On the contrary, the controversy here has never involved anything but the 1938 tax—both the disallowed deductions on which the deficiency was based and the interest claim used as a setoff against the deficiency arose out of 1938 transactions exclusively.

But once it is conceded that only 1938 is involved here, it becomes obvious that Padín was not entitled by way of recoupment to the credit of $2,063.15 against the 1939 deficiency. "Recoupment, unlike statutory set-off and counterclaim, allows for no affirmative judgment for one who successfully asserts it. It is a shield not a sword. The most it can do is to protect one against a recovery by an opponent." *Electric Storage Battery Co. v. Rothensies,* 152 F.(2d) 521, 526 (C.C.A. 3rd, 1945), reversed on other grounds, 329 U. S. 296, *supra; Pennsylvania R. Co. v. Miller,* 124 F.(2d) 160 (C.C.A. 5th, 1941); McConnell, *supra,* 579–86, 603; Restatement, Judgments, p. 217.

In granting this $2,063.15 credit to Padín, the Treasurer disposed of the controversy involving 1938 by giving Padín what was in effect an affirmative judgment for that amount. But we have found no case, and Padín has cited none, in which a claim for recoupment has resulted in an affirmative judgment for the defendant. Indeed, the very theory of recoupment in tax litigation—an inconsistent claim based on the same transaction can be defeated to the extent that the

916

claimant has already profited from a different theory which it is now too late to contest—demonstrates the vice of permitting an affirmative judgment. The courts will not permit the plaintiff, by use of the statute of limitations, to enrich himself unjustly by espousing two inconsistent theories as to the same transaction. By the same token, while the courts will rescue the defendant from this predicament, they will not grant him a windfall by permitting him to recover an affirmative judgment which he could not have otherwise recovered in an independent suit against his adversary on the recoupment claim which, standing alone, has prescribed.

We turn next to *Lewis* v. *Reynolds* on which Padín also relies in its first assignment of error. That case holds that if the taxpayer sues for refund of income tax, the government may offset against the plaintiff's claim the latter's laibility on any other item for the *same year* despite the fact that the statute of limitations would otherwise bar a notice of deficiency therefor. See *Moran* v. *United States,* 19 F. Supp. 557 (Ct. Cls., 1937); *Globe Gazette Printing Co.* v. *United States,* 13 F. Supp. 422 (Ct. Cls., 1936); *Hendler* v. *United States,* 17 F. Supp. 558, 568 (Dist. Ct., Md., 1936). The *Lewis* opinion consists in effect of one paragraph reading as follows (p. 283): "While the statutes authorizing refunds do not specifically empower the Commissioner to reaudit a return whenever repayment is claimed, authority therefor is necessarily implied. An overpayment must appear before refund is authorized. Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded."

The *Lewis* case did not involve recoupment; it involved "adjustment of unrelated items within a single year, rather than recoupment". McConnell, *supra,* p. 599. That the two concepts although related are different is shown by the fact

that the *Lewis* case is not even cited by the Supreme Court in the recoupment cases.

Zimet, *supra,* p. 48, states the basis for the *Lewis* doctrine as follows: "... there is for federal income tax purposes a fundamental concept that the law imposes the tax with reference to a fixed period of time. The annual period is a matter of necessity if the law is to be administered; it has been called the cornerstone of our tax structure. Now, our tax is not, though perhaps it may be, imposed on gross income; it is imposed on net income, for a proper determination of which many factors must be considered and combined. If any factor has been incorrectly handled, the whole calculation must be made again. When recalculation is required, by either refund claim or assertion of deficiency, it ought to be as nearly correct as possible."

We assume, without deciding, that we would reach the same result as the *Lewis* case and that it applies when the taxpayer as well as the Treasurer is the defendant. But just as in the recoupment cases, the doctrine of the *Lewis* case is a shield not a sword—it can be utilized only as a defense and not to obtain an affirmative judgment. McConnell, *supra,* p. 605; 52 Harv.L.Rev. 300, 303. Once more as in the case of recoupment it is clear that one who is permitted as a matter of equitable adjustment to use defensively an otherwise barred claim, should not be able to turn that claim into a weapon to obtain an affirmative judgment which he could not have recovered if he had sued in his own right.

Once we recognize that the doctrine of the *Lewis* case is a shield not a sword, it is apparent that it does not apply to the facts herein. Since, as we have seen, only 1938 income was in dispute here—indeed it is precisely only when the income for the same year is involved that the *Lewis* case applies—the 1938 interest claim of the defendant can at the the most offset the 1938 deficiency. But here the predecessor of the Treasurer went further and in addition to taking that step also credited the portion of the 1938 interest claim

which éxceeded the 1938 deficiency against the 1939 deficiency. By this latter action the Treasurer in effect granted an affirmative judgment to Padín in violation of the rule that the doctrine of *Lewis* v. *Reynolds* can not be invoked to obtain such an affirmative judgment.[3]

Padín has another string to its bow. It has a 1938 setoff claim against a 1938 deficiency. The former is larger than the latter. No affirmative judgment is allowed after the 1938 setoff claim has satisfied the 1938 deficiency. Padín nevertheless proposes that the remaining portion of the 1938 setoff claim be used against an unrelated 1939 deficiency. This would, of course, extend the *Lewis* doctrine by permitting a barred setoff claim to be used against a plaintiff's claim even though the latter is for a different year than the setoff claim. Maguire and Zimet, *supra,* emphasizing the point that both the holding and *rationale* of the *Lewis* case confine the recalculation of the tax to only one year, reject this proposition of Padín at p. 1324 as follows:

"Start jumping the boundaries of the very year to which the refund claim applies, and there will be no stopping point short of the extreme temporal limits of financial relations between taxpayer and government. Such acrobatics outrate conventional notions of legal repose.

"Arguing more closely . . . The Statute of Limitations forbids collection of more tax or allowance of further refund, or anything equivalent thereto, but not exact recalculation. Mere recalculation suffices within the limits of one twelve-month unit. It does not suffice when a tax obligation for one such unit is sought to be controlled by an outlawed tax obligation for another like period."

We make every effort to spell out a statute of limitations in II. It therefore scarcely seems reasonable for us by judicial construction to obliterate the statute of limitations here and to permit cross-claims on both sides reaching back to

---

[3] Zimet, *supra,* says at p. 70: ". . . *Lewis* v. *Reynolds* allows only a defense and cannot be used to justify an affirmative judgment. This can be judicially corrected; but if not, should be legislatively corrected." For the reasons stated herein, we are unable to agree that such "judicial correction" should be made.

the beginning of taxation in Puerto Rico merely because a taxpayer or the Treasury litigates one particular tax claim. Moreover, even if we were persuaded to open this Pandora's box of litigation, a 1937 deficiency for more than $7,000— a sum considerably larger than the amount Padín seeks to recover here—was held by the Tax Court to be barred by the statute of limitations. The theory Padín advances here, if tenable, would in turn require us to set off that 1937 deficiency against the claim Padín makes here and thus wipe out the latter.

It seems obvious that even if we accept *Lewis* v. *Reynolds* in this jurisdiction, we must follow the rule it establishes of confining the recalculation of taxes to the year of the claim which precipitated the controversy. And this means that the portion of 1938 interest claim involved here can not be used to offset the 1939 deficiency.

## II

As we have seen, in 1946 the Treasurer, by filing a new computation, reversed that part of the credit for overpayment of the 1938 tax which the predecessor of the Treasurer had granted Padín in 1944 against a pending 1939 deficiency. The second assignment of error is that if by filing this new computation in 1946 the Treasurer was in effect notifying Padín of a new deficiency for 1938, this new deficiency was barred by the seven-year limitation period therefor found in § 60(a) (1) of the Income Tax Act.

When the Treasurer concludes that he has by mistake made an erroneous refund, he may reopen the case, redetermine the tax by disallowing the refund and send the taxpayer notice of a new deficiency, provided the statute of limitations has not yet run. *Burnet* v. *Porter*, 283 U. S. 230; *Page* v. *Lafayette Worsted Co.*, 66 F.(2) 339 (C.C.A. 1st, 1933); *Austin Co.* v. *Commissioner of Internal Revenue*, 35 F.(2) 910 (C.C.A. 6th, 1929); 10 Mertens, *supra,* § 58.103, pp.

425–26; Maguire and Zimet, *supra,* pp. 1292–93, footnote 40; 49 Yale L. J. 1250, 1265.

■ We assume, without deciding, that the filing of the new computation in 1946 by the Treasurer was tantamount to notice of a new deficiency for 1938, despite the fact that it was done within a proceeding involving a 1939 tax and despite the failure of the Treasurer to follow the established statutory procedure therefor. See *Ballester* v. *Court of Tax Appeals,* 60 P.R.R. 749; *Fiddler* v. *Tax Court,* 65 P.R.R. 189. Cf. *P. R. Ry. L. & P. Co.* v. *Buscaglia, Treasurer,* 62 P.R.R. 572. The difficulty is that in order to conform as closely as possible to the statutory definition of a deficiency, see *Ballester* v. *Court of Tax Appeals, supra,* the money involved in the erroneous refund is treated as though it had never been paid originally by the taxpayer. The statute of limitations for such a new deficiency is therefore calculated from the date it would have begun to run if the tax had never been paid originally, not from the date of the erroneous refund. *Carney Coal Co.* v. *Commissioner,* 10 B.T.A. 1397, 1403–04; *C. E. McCutchen* v. *Commissioner,* 16 B.T.A. 569; 10 Mertens, *supra,* p. 426, cases cited in footnotes 92, 93. Consequently, the right of the Treasurer to notify Padín of a new deficiency began to run in 1938 and had already prescribed when the Treasurer filed his computation in 1946.

The Tax Court apparently ruled that if the action of the Treasurer be considered notice of a new deficiency, it was not barred because the deficiency was for 1939, which could still be imposed in 1946. This was erroneous. As we have already indicated, this controversy is exclusively over the deductibility of a small portion of the interest paid by Padín in 1938. The Treasurer did not create a controversy about the 1939 tax when he credited Padín with overpayment of the 1938 tax against the 1939 deficiency instead of making a refund in cash of the 1938 overpayment. The deficiency—if it be one—is for 1938, not 1939. It is therefore barred by the seven-year limitation period found in § 60(a)(1).

■ However, notice of a new deficiency is not the exclusive method available to the Treasurer to collect taxes. He may bring a suit for collection of taxes without assessment of a deficiency within the seven-year period of §§ 60(1) and 61(c) of the Income Tax Act. The question therefore arises as to whether the modification of the computation by the Treasurer in 1946 was in substance a suit to collect 1938 taxes without assessment of a deficiency.

■ We are aware of the history of suits to recover erroneous refunds in the Federal system. The Federal cases held (a) that such a suit is not a proceeding for the collection of taxes, but rather is a suit which the government has always been entitled to maintain to recover money illegally paid by mistake by a government official. *Smyth* v. *United States*, 92 F.(2) 900 (C.C.A. 10th, 1937); *United States* v. *Tuthill Spring Co.*, 55 F(2d) 415 (Dist. Ct. Ill., 1931); *Champ Spring Co.* v. *United States*, 38 F.(2d) 988 (Dist. Ct., Mo., 1929); *Talcott* v. *United States*, 23 F.(2d) 897 (C.C.A. 9th, 1928); *Craig* v. *Commissioner*, 18 B.T.A. 86, 90; and (b) that in the absence of specific legislation provision therefor, the statute of limitations never runs against such a suit. *United States* v. *Wurts*, 303 U. S. 414; *Smyth* v. *United States*, *supra*; *Woolner Distilling Co.* v. *United States*, 62 F.(2) 228 (C.C.A. 7th, 1932); *United States* v. *Bartron*, 35 F.(2) 765 (Dist. Ct., S.D., 1929).

Congress soon realized the inequitable result of the Federal cases holding that no statute of limitations existed for suits to collect erroneous refunds. It therefore enacted § 610 of the Internal Revenue Act of 1928, 26 U.S.C.A., Internal Revenue Acts, pp. 460–61, providing that such suits must be brought within two years after the refund. And in view of the cases decided prior to 1928 to the effect that no such statute of limitations existed as yet, it has been held that § 610 did "not grant the Government a new right, but is a limitation of the Government's long-established right to sue for money wrongfully or erroneously paid from the public

treasury." *United States* v. *Wurts, supra,* p. 416; Seidman's Legislative History of Federal Income Tax Laws, pp. 567–72 *United States* v. *Bartron, supra;* 10 Mertens, *supra,* §§ 58.101–104, pp. 422–27.

Sections 60(1) and 61(c) were copied in 1924 by our Legislature from the Federal Act. There is therefore room for argument that just as in the Federal system a suit to recover an erroneous refund is not a suit to collect taxes but a suit to recover money illegally paid by mistake by a government official; and that since our Legislature has not followed the lead of the Congress in enacting § 610 in 1928, no statute of limitations exists against such a suit.[3a]

However, the cases which hold that the Federal Act from which we copied §§ 60(1) and 61(c) in 1924 did not include a prescriptive period for suits for erroneous refunds were decided, so far as we are aware, subsequent to 1924 and are therefore not binding on us. But apart from the dates of those Federal cases, we are unable to agree that, as a procedural and jurisdictional problem under local law, a suit to recover an erroneous refund is not a suit to collect taxes. It must be remembered that we are not as in the Federal system plagued with the problem of determining which of three courts—the Tax Court, the district court, or the Court of Claims—has jurisdiction in a particular case arising out of a controversy over taxes. Cf. *Commissioner* v. *Gooch Co.,* 320 U. S. 418. When the Treasurer sues to recover an erroneous refund, he is attempting to collect a debt arising out of a tax obligation just as much as if he had redetermined the tax and sent a notice of a new deficiency which, as we have seen, the cases hold he can do to recover an erroneous refund. And the court hearing the case will be required to decide a question of tax liability. Indeed, that

---

[3a] In view of the result we reach in the next paragraph, we assume without deciding that the general fifteen-year statute of limitations provided in §1864 of the Civil Code does not apply to a suit by the government to recover an erroneous refund of taxes.

is enough to give our Tax Court jurisdiction, since that court has exclusive jurisdiction over "all actions . . . and claims of any kind, relating to or affecting the levying, collection, payment, return, or reimbursement of all kinds of taxes . . ." Section 4, Act No. 169, Laws of Puerto Rico, 1943; *Andréu Aguilar & Co.* v. *District Court*, 64 P.R.R. 770. We are therefore of the view that, without reference to the dialetics in which the Federal cases engage to determine which court has jurisdiction in a particular case, a suit to recover an erroneous refund in this jurisdiction is in substance a suit to collect taxes. And as we have seen, a suit for the collection of taxes is governed by the seven-year limitation period provided in §§ 60(a) (1) and 61(c).

To hold the contrary would be for us to say that the Legislature intended to keep open forever the question of whether the Treasurer had made an erroneous refund. We are not prepared to impute such an unreasonable intention to the Legislature. Indeed, all the considerations in favor of a statute of repose on which the Treasurer relies in I and which are recited in the *Electric Storage Battery Co.* case apply with equal force here.[4]

Having concluded that the seven-year statute for suits for collection of taxes applies herein, we must next determine when that period begins to run. Section 610, enacted

---

[4] "It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence, a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy.

"We have had recent occasion to point out the reason and the character of such limitation statutes. 'Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them' . . ." 329 U. S. 296, 301.

by Congress in 1928, specifically provides that in a suit to recover an erroneous refund the statute begins to run from the date of payment, not allowance, of the refund. *United States* v. *Wurts, supra.* Section 610 does not, of course, apply here. But the *Wurts* case does point at p. 418 to a general principle which is also pertinent here: the statute does not begin to run until the government's right has accrued in a shape to be effectually enforced.

When the Treasurer seeks to recover an erroneous refund by a notice of deficiency, the case must be treated as we have seen as though the tax was never paid originally in order to meet the statutory definition of a deficiency and consequently the statute begins to run from the date the return was filed. But the situation is necessarily different when instead a suit to recover an' erroneous refund is involved. We concede *arguendo* for the benefit of the taxpayer that the credit in 1944 for overpayment of the 1938 tax against the pending 1939 deficiency was equivalent to payment in cash.[5] Nevertheless, the Treasurer did not have a cause of action against Padín which he could effectually enforce until 1944 simply because the Treasurer could scarcely recover an erroneous refund before he actually made the refund in 1944. *Paulson* v. *United States,* 78 F.(2) 97 (C.C.A. 10th, 1935). And treating the modification by the Treasurer of the computation in 1946 as in effect a suit to recover an erroneous refund,[6] the suit to recover the erroneous refund made in 1944 was not barred: it was filed in 1946, which was several years prior to expiration of the seven-year limitation period.

The result here is not quite so satisfactory as that provided by Congress when it enacted § 610 of the Federal Act of 1928 as a statute of repose. There if the Commissioner

---

[5] See *United States* v. *Swift & Co.* and *United States* v. *Botany Worsted Mills, infra,* discussed in III.

[6] The reasons for treating the modification of the computation by the Treasurer as in effect a suit to recover an erroneous refund are discussed in III, *infra.*

wishes to sue to recover an erroneous refund, he must do so within two years of payment to the taxpayer of the refund. Here the taxpayer is forced to consider his tax liability for a particular year as not definitely settled for a considerably longer period: the taxpayer has four years to petition for refund of an overpayment,[7] and the Treasurer has seven more years after paying the refund to sue to recover it as an erroneous refund. But at least, as already indicated, we have avoided the result of the Federal cases decided between 1924 and 1928 which held that this latter right of the Treasurer had no limitation in time.

[11] It remains only to note that a refund is classified as erroneous if it was made by virtue of a claim which as here was already barred by the statute of limitations when the claim was first made.[8] This is demonstrated by the history of § 610 of the Federal Act of 1928. As we have seen, § 610 did not create the right to a refund but only placed a period of limitations on an existing right. *United States* v. *Wurts, supra.* Section 608, which defines refunds of barred claims as erroneous, is not the exclusive source of the right to a refund; other types of refunds not covered by its terms, though now subject to the two-year limitation period of § 610, still exist independently of § 608. *Smyth* v. *United States, supra; Hughes* v. *Commissioner,* 21 B.T.A. 1075. It is therefore still an open question as to what other types of refund may be classified as erroneous. But for our purposes, the significance of § 608 is that in defining an

---

[7] See IV, *infra.*

[8] We do not reach the question in this case of whether a refund of a barred claim could be recovered by the Treasurer as an erroneous refund if instead of overlooking the statute of limitations the Treasurer made the refund deliberately and consciously, either with or without a closing agreement under § 73 of the Income Tax Act. *Botany Worsted Mills* v. *United States,* 278 U. S. 282; *L. Loewy & Son* v. *Commissioner of Internal Revenue,* 31 F.(2) 652 (C.C.A. 2nd, 1929). Since the record contains no evidence that in this case the Treasurer avowelly attempted to waive the statute of limitations in making this refund, we leave that question for another day. See *United States* v. *Garbutt Oil Co.,* 302 U. S. 528; cf. *United States* v. *Michel,* 282 U. S. 656.

erroneous refund—in order to establish limitations on an existing right, not to create one—it specifically defines a refund made after the claim therefor had prescribed as an erroneous refund. The net result is that whatever other refunds may or may not be classified as erroneous, the refund herein is and was prior to and independent of § 608 a classical type of erroneous refund. It is therefore an erroneous refund within the meaning of our Act, which contains neither § 608 nor § 610. And this is true regardless of the merits of the claim before it was barred by the statute. 10 Mertens, *supra*, § 58.01, p. 424, footnote 87; see *Smyth* v. *United States, supra.*

### III

Padín next contends that the credit by the Treasurer of a portion of the overpayment of its 1938 tax against its pending 1939 deficiency was equivalent to a refund thereof in cash, and that consequently the only way for the Treasurer to unravel that closed transaction is to sue Padín in a new and independent action to recover the said refund as erroneous and not as here by modifying the computation of the 1939 deficiency.

We readily agree that the rule is clearly established as a general proposition that the crediting of an overpayment of taxes for one year against taxes then due for another year constitutes payment of the latter taxes as effectively as if such payments had been made in cash. *United States* v. *Swift & Co.,* 282 U. S. 468; *United States* v. *Botany Worsted Mills,* 98 F.(2d) 880 (C.C.A. 3rd, 1938). And we recognize that it therefore follows that "Where it is later determined that the allowance of the overpayment so credited was erroneous, the liability against which the credit was made and satisfied, remains satisfied. In such case, the only open question of tax liability has been held to pertain to the year with respect to which the erroneous allowance or overpayment was made." 10 Mertens, *supra,* § 58.35, p. 321.

Indeed, we had already come to this last conclusion when we held in II that a deficiency was barred here because the amount in controversy involved a 1938 (the erroneous overpayment year) and not a 1939 (the year to which the credit was applied) tax. But acceptance of these two statements of the law does not necessarily require the conclusion that the Treasurer must therefore bring a new action for the sum involved here.

In *Commissioner of Internal Revenue* v. *Newport Industries, Inc.*, 121 F.(2d) 655 (C.C.A. 7th, 1941), the court went even further than our Tax Court did in this case. In the *Newport* case the Commissioner allowed an overpayment claim and then credited the overpayment against a deficiency for a prior year. The resulting balance for the prior year was paid by the taxpayer. Thereafter, the Commissioner concluded that he had erroneously allowed the overpayment claim. Whereupon he disallowed the overpayment claim by the device of reversing the credit against the deficiency for the prior year and reinstating the said deficiency. The Tax Court held that the overpayment claim was the item in controversy; that allowance thereof as a credit against a deficiency for a prior year was equivalent to payment in cash; that only a suit to recover an erroneous refund would lie; and therefore that the action of the Commissioner in reasserting the deficiency for the prior year was improper. 40 B.T.A. 980. The Circuit Court, while apparently conceding that the overpayment year, and not the prior year, was in controversy, nevertheless reversed the Tax Court and upheld the action of the Commissioner, in view of the fact that the statute of limitations had not yet run against a suit for collection of an erroneous refund. It said at p. 657:

"Respondent argues not that the Commissioner lacks the power to correct erroneous action, but that he should not exercise this power except by way of a suit for recovery of an erroneous refund. In this case, instead of bringing such a suit, the Commissioner simply reversed the credit, which accomplished the same result. Certainly

resort to one method of correction instead of the other, did not deprive respondent of anything to which it had any right, for if there is error, respondent still owes the Government, and it should matter little to respondent as to what form that debt assumes. Since we see no legal objection to the methods selected by the Commissioner, to condemn it would be to interfere unduly with administrative discretion.''

Here as in the *Newport* case the statute of limitations had not run against a suit for collection of the erroneous refund. It would therefore seem to be an empty formality to hold that the government must sue independently for collection of an erroneous refund of the 1938 tax and may not accomplish the same practical result by withdrawing the credit which it gave Padín therefor on its 1939 deficiency. And this seems particularly true in this jurisdiction where unlike the Federal system all tax cases are heard by the same court.

Nevertheless, we need not decide whether we are disposed to go as far as the *Newport* case. See 10 Mertens, *supra,* pp. 322-3, footnote 54. In that case the tax controversy concerning the prior year had been terminated by payment of the balance by the taxpayer, and the Commissioner revived it with a deficiency which involved the tax for another year. Our facts are different. Although the 1938 overpayment had been credited against the 1939 deficiency, the balance of the latter had not yet been paid. The case involving the 1939 deficiency was still pending in the Tax Court, which had ordered the Treasurer to file a new computation therein. Despite the rule that such a credit is the equivalent of cash, the money itself was still in the hands of the government.

In *Otis Elevator Co.* v. *United States,* 36 F.Supp. 328 (Ct. Cls., 1941), the court was confronted with a somewhat similar situation. There the Commissioner found that the taxpayer had overpaid its tax for 1930, but witheld refund thereof pending the determination of taxpayer's liability for taxes involving other years then pending before the Board of Tax Appeals. Thereafter, the Commissioner reversed him-

self as to the 1930 overpayment, finding that there actually was a deficiency instead of an overpayment for that year. In deciding the suit by the taxpayer in favor of the government, the court said (p. 332): "even though the taxes have actually been refunded, and if it later develops that they have been erroneously refunded, the United States may sue and recover them. *Talcott* v. *United States,* 9 Cir., 23 F.2d 897, and cases there cited. *Champ Spring Co.* v. *United States,* 8 Cir., 47 F.2d 1. *A fortiori,* if, before there has been a refund of them, it is discovered that plaintiff has not in fact overpaid its tax, no refund will be required." See also *Daube* v. *United States,* 289 U. S. 367, 371–2; *Ridway* v. *United States,* 18 Ct. Cls. 707, 714–15; *United States* v. *Michel,* 282 U. S. 656; *Stone* v. *White, supra;* Parker, Administrative Res Judicata, 40 Ill. L. Rev. 56, 69–70.

The short of it is that here the Treasurer was barred by the statute of limitations from assessing a new deficiency. But he was not barred by the statute from suing for collection of an erroneous refund. And despite the fact that the only matter in controversy here involved a 1938 erroneous refund whereas the case pending in the Tax Court involved 1939, this court will nevertheless not require the useless formality of a new independent suit for collection of the erroneous 1938 refund if the Treasurer instead of making the erroneous refund in cash credited it against a pending 1939 deficiency and thereafter discovered the refund was erroneous prior to the termination of the pending case involving the 1939 deficiency. Under those circumstances, the Treasurer may set aside the refund and withdraw the credit therefor against the pending 1939 deficiency. Indeed, this comes within the spirit, if not the letter, of § 64(*a*) of the Income Tax Act that overpayments of taxes shall be credited against any income tax then due from the taxpayer and of § 124 of the Political Code that "No money shall be paid . . . to any claimant in satisfaction of any claim or demand against the insular treasury, where such person or claimant is in-

debted and in arrears to the People of Porto Rico . . . until he has accounted for and paid to the Treasurer of Porto Rico all sums for which he may be liable . . ." See *Cherry Cotton Mills* v. *United States*, 327 U. S. 536.

Finally, Padín complains that the Tax Court had no jurisdiction over the matter in controversy herein. But we have already indicated in II that, in order to give taxpayers the benefit of the statute of limitations found in §§ 60(1) and 61(c), we would hold, contrary to the Federal cases, that a suit to recover an erroneous refund was a suit for the collection of taxes. Once we reach the result that the controversy herein is in effect a suit to collect taxes, by the same token § 4 of Act No. 169 creating the Tax Court vests jurisdiction in that court to decide this case.

Nor are we impressed by the argument that no administrative decision of the Treasurer—a prerequisite under § 4 for jurisdiction of the Tax Court—was made here. It must be borne in mind that this is not a case where the taxpayer is attempting to obtain relief from the Tax Court. Here the Treasurer himself has made an administrative determination which in turn has led him to make a claim in the Tax Court. Under those circumstances the action of the Treasurer in amending his computation, together with his notice of opposition to the petition of Padín for restoration of the original computation, constituted substantial compliance with the requirement of § 4 for an administrative decision. Cf. *Andreu Aguilar & Co.* v. *District Court, supra.*[9]

---

[9] Padín apparently makes no contention that the highly technical rule of *Morán* v. *District Court*, 55 P.R.R. 618, that a suit to collect taxes must be brought by the People of Puerto Rico, represented by the Governor, and not by the Treasurer, prevails under existing statutes. In *Andréu Aguilar & Co.* v. *District Court, supra*, we said at p. 774: "We are of the opinion that the purpose of the Act creating the Tax Court was to establish a tribunal vested with exclusive jurisdiction, before which the taxpayer as well as the Treasurer of Puerto Rico may appear in order to institute any action, proceeding, or claim relating to or affecting the levying, collection, payment, return, or reimbursement of all kinds of taxes an excises."

■ We emphatically agree with Padín and the Tax Court that the Treasurer should litigate such questions by seeking amendment of the pleadings rather than by submitting a computation, after decision of the case, calculated on a theory different from that on which the case was tried. And the Tax Court should in the future as a matter of orderly procedure require amended pleadings rather than the submission of a computation involving substantive questions foreign to those raised by the pleadings. But if the taxpayer is given and adequate opportunity to meet the new issue, as it was here, we are unable to see what prejudicial error the taxpayer suffers from the procedure followed here. See *Fiddler* v. *Tax Court*, 65 P.R R. 189; *Buscaglia, Treas.* v. *Tax Court*, 65 P.R.R. 921.

## IV

■ We have been assuming that the refund made by the Treasurer in 1943 for overpayment of the 1938 tax was erroneous because the claim therefor was not made within four years from the time the tax was paid and was therefore barred under § 64(b) of the Income Tax Act. But Padín contends that this refund was made pursuant to § 75, not § 64, of the Act; that there is no statute of limitations for claims made under § 75; and therefore that the refund was not erroneous.[10]

Section 64(a) provides that "Where there has been an *overpayment* of any income . . . tax imposed by this Act . . . the amount of such *overpayment* shall be credited against any income . . . tax . . . then due from the taxpayer, and any balance of such excess shall be refunded immediately to the taxpayer." Section 64(b) provides that ". . . no such

---

[10] We assume, without deciding, that when Padín included in its petition for reconsideration of the 1938 deficiency a claim for overpayment of the 1938 tax because of its failure to deduct interest paid in 1938, it complied with the requirements for a petition for refund.

Again, as in footnote 3a, we find it unnecessary to inquire if § 1864 of the Civil Code applies herein.

credit or refund shall be allowed or made after four years from the time the tax was *paid,* unless before the expiration of such four years a claim therefor is filed by the taxpayer . . ." (Italics ours.)

On the other hand, § 75 reads as follows: "The Treasurer is authorized to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected; and shall make report to The Legislature of Puerto Rico at the beginning of each regular session of all transactions under this section."

In copying § 64 from the Federal Act, our Legislature also copied the provision thereof providing for a statute of limitations. But when it copied § 75, it omitted the statute of limitations found in the Federal statute. Cf. *Bonet* v. *Yabucoa Sugar Co.,* 306 U. S. 505, 509. This may have been due to the fact that the remedy under § 75 at that time in voluntary payment cases was administrative only, and could not be enforced judicially. *Bonet* v. *Yabucoa, supra.* But now that such a case arising under § 75 may be litigated in the courts, *The Coca Cola Export Sales Co.* v. *Tax Court,* 65 P.R.R. 142, a statute of limitations, although it does not yet exist, is as necessary for such cases as it is for suits arising under § 64. See footnote 4. And there certainly is no reason for us to expend the scope of § 75 in order to apply it to cases it does not clearly cover. On the contrary, all the policy considerations in favor of a statute of limitations which are considered elsewhere in this opinion lead us to the conclusion that § 75, without a statute of limitations, should if possible not be construed so as to absorb the cases under § 64, which does contain a period of limitations. Half a loaf is better than none is just as true in the law of statute of limitations as elsewhere. With these consideration in mind, we turn to the problem of determining if § 64 or § 75 applies to the facts herein.

We see no purpose in examining in detail the legislative history of §§ 64 and 75 and their Federal counterparts, except to point out that the Federal cases apparently hold that the Federal equivalents of §§ 64 and 75 refer to different things: payment by the taxpayer on his own initiative as against payment at the instance of the Treasurer. *Huntley v. Southern Oregon Sales. Inc.*, 102 F.(2d) 538 (C.C.A. 9th, 1939); *United States v. The Lederer Terminal Warehouse Co.*, 139 F.(2d) 679 (C.C.A. 6th, 7943); *In re Tindle's Estate*, 59 F.Supp. 667 (Dist. Ct., Pa., 1945). In pointing out that the Federal equivalent of § 64, with a short statute of limitations, applies to suits to recover overpayments whereas the Federal equivalent of § 75, with a longer period of limitations, applies to erroneous or illegal assessment and collection by the Treasurer, these Federal cases assert that Congress evidently considered that "less time would be required for the discovery of errors in tax returns resultant from miscalculations or mere overpayment than would be required to ascertain the erroneous or illegal nature of an assessment." *United States v. The Lederer Terminal Warehouse Co.*, *supra*, 681; *Huntley v. Southern Oregon Sales, Inc.*, *supra*, 543.

If the said Federal cases were controlling, our search would be ended: this is a suit for refund of an overpayment and therefore § 64, with its period of limitations, applies. But this case does not require us to determine if we would follow in all cases the Federal cases which establish the aforesaid difference between suits brought under the Federal counterparts of §§ 64 and 75. Nor do we find it necessary in this case to disentangle §§ 64 and 75, which have frequently been considered together. Article 341, Regulations; *The Coca Cola Export Sales Co. v. Tax Court, supra; Sucesores de A. Mayol & Co., Inc. v. Sancho, Treas.*, 51 P.R.R. 145. The contention of Padín fails here for a more fundamental reason. For it to prevail we must find that § 75 *alone* applies to this case. This is because if § 64 as well as § 75

applies, the four-year statute of limitations in § 64 comes into play. But the plain terms of § 64 provide for a period of limitations for refund of an overpayment of taxes, which is exactly what is involved here. And since Padín did not make its claim within the period of limitations found in § 64, that is enough to decide this point against Padín.[11]

■ Nor can it be contended that Padín was entitled to file a petition for refund herein without any limitation of time pursuant to the Act of February 12, 1904 (Comp. Stat. 1911, § 2365). We rejected a similar contention in *Loíza Sugar Co.* v. *Domenech, Treasurer,* 45 P.R.R. 294. The rule is that if a special statute concerning a particular tax exists —in this case, § 64(a)—the latter, and not a general statute such as the Act of 1904, governs. *Loíza Sugar Co.* v. *Domenech, Treasurer, supra; P. R. Fertilizer Co.* v. *Treasurer,* 50 P.R.R. 389; *Mayagüez Light, Power & Ice Co.* v. *Tax Court,* 65 P.R.R. 28. Cf. *R. Santaella & Bros. Inc.* v. *Tax Court, ante,* p. 819.

The decision of the Tax Court will be affirmed.

---

[11] We note that in *The Coca Cola Export Sales Co.* case we did not examine the question of whether a claim for return of an overpayment falls under § 64 or § 75. We discussed the question as though such a claim could be filed under either Section and held that a claim under § 75 could now be pressed in the courts as well as before the Treasurer even if payment of the tax had been voluntary. We are still of the view that access to the courts is permitted in such cases under present law. But now that the question has arisen, we make it clear that an overpayment claim such as in this and *The Coca Cola Export Sales Co.* case arises either under § 64 exclusively or at least under § 64 as well as § 75, and that the period of limitations found in § 64 applies thereto.