CARNEY COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5562, 8496. Promulgated March 15, 1928.

*Lawrence Graves, Esq., Edward J. Quinn, Esq.,* and *William S. Bennett, Esq.,* for the petitioner.

*M. E. McDowell, Esq.,* and *Granville S. Borden, Esq.,* for the respondent.

## OPINION.

MARQUETTE: It is the contention of the petitioner that (1) collection of the additional taxes involved herein for the fiscal years ended May 31, 1917, 1918, and 1919, respectively, is barred by the statute of limitations, and that there are no deficiencies for those years; (2) that the March 1, 1913, fair market value of its properties was $1,500,000, which should be used for the purposes of determining depreciation, depletion and invested capital, and whether or not profit was realized from the sale of the property on December 31, 1919; and (3) that the March 1, 1913, value of its properties had been finally

determined and fixed by Commissioner Roper and that the present Commissioner, in the absence of a showing of fraud, misrepresentation, or gross error, is without authority to reverse or set aside that determination.

Upon consideration of the record herein we are of the opinion that the petitioner's first contention must be sustained as to the fiscal years ended May 31, 1917, and May 31, 1919. The evidence shows that the petitioner's return for the fiscal year ended May 31, 1917, was filed on March 26, 1918. The five-year period for assessment and collection provided by section 250 (d) of the Revenue Act of 1921 began on the date the return was filed and expired on March 26, 1923. However, waivers were filed by the petitioner on January 25, and June 21, 1921, and the additional taxes in question were assessed in July 1923, pursuant to the waivers. These waivers expired April 1, 1924, (Proclamation of Commissioner, Mim. 3085, C. B. 11–1, p. 174), and collection of the tax not having been made prior to the expiration of the waivers, it became barred on that date. Since collection of the tax had become barred prior to the enactment of the Revenue Act of 1924, the bar was not removed by either that Act or the Revenue Act of 1926. On the contrary, the liability was extinguished by section 1106 (a) of the Revenue Act of 1926, which provides that "The bar of the statute of limitations against the United States in respect of any internal-revenue tax shall not only operate to bar the remedy but shall extinguish the liability   *   *   *." There is no deficiency for the fiscal year ended May 31, 1917. *Appeal of Ocean Accident & Guarantee Corporation, Ltd.*, 6 B. T. A. 1045, and *Appeal of D. C. Jackling*, 9 B. T. A. 312.

The petitioner's income and profits-tax return for the fiscal year ended May 31, 1919, was filed on August 15, 1919. On November 10, 1923, additional tax for that year was assessed in the amount of $34,368.59. On November 28, 1923, the respondent sent two telegrams to the collector at Chicago advising that the additional assessment had been made prematurely and through error, and directing him to file a claim for the abatement of such taxes. The claim was filed by the collector and was allowed by the respondent on or about November 24, 1924. Subsequently, on January 26, 1925, more than five years after the date the petitioner's return for the fiscal year ended May 31, 1919, was filed, the respondent attempted to reverse or rescind the abatement and to reinstate the assessment of November, 1923. In our opinion this latter action was of no force or effect. The respondent's action on November 24, 1924, was just as effective and as much a valid exercise of his authority as any other official act, and it operated to wipe out the assessment, and from that time on the assessment was dead and as though it had never been made.

The subsequent attempted reversal or rescission of the abatement did not, in our opinion, operate to reinstate or revivify the assessment as of a prior date. There was not, therefore, any assessment of the additional taxes claimed for the fiscal year ended May 31, 1919, outstanding after November 24, 1924, and more than five years having elapsed since the return was filed, the respondent could not then, and can not now, legally make a new assessment except with the consent of the petitioner, which has not been given. We conclude that there was no existing assessment of the tax in question, that the period within which assessment might be made expired on August 15, 1924, and that the liability has been extinguished by section 1106 (a) of the Revenue Act of 1926.

In regard to the petitioner's contention that collection of the additional tax for the fiscal year ended May 31, 1918, is likewise barred by the statute of limitations, the answer must be in the negative. The petitioner's return for that year was filed on June 14, 1919, and the tax herein was assessed in July 1923, which was within the five-year period for assessment provided by the Revenue Act of 1921. The five-year period did not, however, expire until subsequent to the enactment of the Revenue Act of 1924 and by section 278 (d) of that Act the time within which collection might be made was extended to six years from the date of the assessment. On this point we sustain the respondent. *Art Metal Works*, 9 B. T. A. 491.

The petitioner urges, however, that even if collection of the additional tax is not barred by the statute of limitations, there was a final determination of the tax liability for the fiscal year ended May 31, 1918, made by Commissioner Roper, which involved the determination and fixing of the value of the petitioner's property for purposes of computing depletion, depreciation and invested capital, and that the respondent is without authority to set aside that determination or to disturb or change that valuation.

Without passing on the merits of the legal question raised, we are of the opinion that the petitioner's contention is not well taken. It may be stated at the outset of this discussion that a valuation of property made by a Commissioner of Internal Revenue for the purposes of computing depletion, depreciation and invested capital for any given year, does not preclude him or his successor in office from determining a different value for the same property to be used in the same way in the computation of the tax for another year. *Appeal of Boyne City Lumber Co.*, 7 B. T. A. 36. In that case we said:

We have heretofore held that our findings of fact as to one year are not conclusive as to any other year, and we have no hesitation in applying the same rule as to conclusions of fact made by the Commissioner. To hold other-

wise would be to perpetuate the error of fact if one were made, and this we will not do.

Therefore, any determination, if one was made by Commissioner Roper or any other Commissioner, as to the value of the petitioner's property for the purposes of computing depreciation, depletion and invested capital for any given year, does not preclude the respondent from determining a different valuation for the year in question. We are unable to perceive where either Commissioner Roper or the respondent made any final determination of the petitioner's tax liability for the fiscal year ended May 31, 1919, or fixed a value for its property until August 28, 1925, the date the deficiency was finally determined and the deficiency letter mailed to the petitioner. It is true that on August 11, 1919, the petitioner was advised by the assistant to the then Commissioner that a revenue agent's report relative to an audit of the petitioner's books and records had been approved and that upon the basis of that report additional taxes had been found due for the fiscal year ended May 31, 1918, and would be assessed. However, there is nothing in that letter to indicate that it was considered to be a final determination and closing of the petitioner's liability to tax for the year mentioned, or that it involved any valuation of the petitioner's property. The report was made five months before the petitioner's return was filed and it, so far as the record shows, purported only to determine the tax liability upon the basis of the figures shown by the petitioner's books. We do not consider the approval of the revenue agent's report and the assessment of tax based thereon as a final determination of the petitioner's tax liability for the years covered by the report or the fixing of a value for the petitioner's property. The only official action of either the present Commissioner or his predecessor that, in our opinion, even remotely approaches a final determination of the tax liability for the fiscal year ended May 31, 1918, was the letter of October 26, 1923, in reply to the petitioner's protest of July 13, 1923, against the additional tax assessed in that month, wherein it was stated that "careful consideration has been given to your contentions * * * that the fiscal years 1917 and 1918 had been previously closed by office letter dated August 11, 1919, and should not be reopened. Your contentions on this point have been conceded by the Unit." Regardless, however, of the opinion that may have been entertained at that time by the officials of the Unit, the fact remains that no action was taken with reference to the tax that had been assessed in July, 1923, until August 28, 1925, when it was abated in part and the deficiency determined. Then, and not until then, was there any final determination made or action taken in regard to the year in question.

The same issue has been raised by the petitioner as to the fiscal year ended May 31, 1920. We are unable, however, to find from the evidence that any action was taken by Commissioner Roper or the respondent prior to May 18, 1925, that is susceptible of being construed as a final determination of the petitioner's tax liability for the fiscal year ended May 31, 1920, or a valuation of its property for the purposes of computing depreciation, depletion or invested capital for that year. The evidence shows that on July 21, 1920, two days before its return for the fiscal year 1920 was filed, the petitioner requested Commissioner Roper to make an examination of its tax liability for the fiscal years ended May 31, 1919, and May 31, 1920. An examination of the petitioner's books was made by revenue agents in 1921 and a report filed by them on June 18, 1921. However, there is nothing to indicate that any action was taken on that report until November 1, 1922, when the petitioner was advised that the additional tax involved herein for the fiscal years mentioned had been found to be due and would be assessed, and final action was not taken thereon until May 18, 1925, when the deficiency was determined.

The only other question for decision is as to the value of the petitioner's property on March 1, 1913. In support of its contention as to this issue the petitioner introduced three witnesses, R. E. Gildroy, S. W. Farnum, and Harry N. Taylor.

Gildroy, a graduate engineer, with more than 30 years practical mining experience in the western States, who was the engineer in charge of the operation of the petitioner's properties from 1906 until they were sold on December 31, 1919, and who remained with the purchasers until late in 1921, testified that in his opinion the properties were more valuable on March 1, 1913, than on December 31, 1919, when they were sold for $1,250,000. When asked how much more valuable the properties were on March 1, 1913, he answered, " from $200,000 to $300,000 more." When asked why he thought they were more valuable on March 1, 1913, and what elements he had taken into consideration, he answered, " The market conditions were much more favorable at that date than they were at a later period. There was the constantly growing competition, both locally and outside of the State. There was the beginning of other developments, and the use of oil, and the use and development of hydroelectric power."

Taylor testified that he had been connected with the operation and management of coal mines for about 42 years; that he is president of the United States Distributing Corporation, the Sheridan-Wyoming Coal Co., the United States Trucking Corporation, and a num-

ber of smaller corporations, and had been president of the Illinois Coal Operators Association, the Southwestern Coal Operators Association, and the National Coal Association, representing the entire bituminous coal industry in America; that he had purchased, developed, and operated coal properties in the States of Indiana, Illinois, Missouri, Kansas, Arkansas, Oklahoma, and Wyoming, and had knowledge of and was familiar with the petitioner's properties and with the conditions in and surrounding the Sheridan Field since 1905 or 1906; that the Sheridan-Wyoming Coal Co., of which he is president, purchased the petitioner's properties on December 31, 1919, for $1,250,000; that in his opinion they had a fair market value of $1,500,000 on March 1, 1913, and that he would have been willing to pay $1,500,000 for them in 1913, whereas he was willing to pay only $1,250,000 on December 31, 1919.

Farnham, an engineer of some 30 years' experience, testified that he was chief engineer in charge of the operations of the 37 mines owned by the Missouri Pacific Railroad until 1901, that since 1901 he has been engineer for the Goodman Manufacturing Co., and in addition thereto engaged in consultation and advisory work in connection with the appraisal, purchase, operation and management of coal-mining properties not only in the United States, but also in European and Asiatic countries, including Russia, India, France, England and Belgium; that he was consulted by the petitioner as to the manner and method of opening and developing its properties in 1904, and had been continuously in touch with the operations and management thereof since that time, and was familiar with conditions in the Sheridan Field in 1913 as well as in 1919; that he considered the properties more valuable in 1913 than in 1919 when sold for $1,250,000. That in his opinion the properties had a March 1, 1913, value of at least $1,500,000, and that he would have recommended its purchase for that price on March 1, 1913.

We are satisfied from the evidence that the fair market value of the petitioner's property on March 1, 1913, was $1,500,000, and that amount should be used as the basis for computing depletion and depreciation for the taxable years involved herein, and for determining whether or not any gain was realized from the sale of the properties on December 31, 1919.

Other assignments of error were set forth in the petition filed herein, but no evidence was introduced in support thereof.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*